[No. F065414. Fifth Dist. Feb. 6, 2013.]

In re ANDREW J., a Person Coming Under the Juvenile Court Law.
SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES et al., Plaintiffs and Respondents, v.
ANDREW J., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., and IV. of the Discussion.

**COUNSEL**

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel (San Bernardino), Stacy A. Moore and Jamila Bayati, Deputy County Counsel; Theresa A. Goldner, County Counsel (Kern) and Brian Van Wyk, Deputy County Counsel, for Plaintiffs and Respondents.

OPINION

**WISEMAN, Acting P. J.**—Andrew J., now 17 years old, became a dependent of the juvenile court in San Bernardino County in 2005. Since October 2010, he has resided with extended family members in Kern County, and his permanent plan is to remain with them until he reaches adulthood. Andrew has significant behavioral issues that threaten his successful transition to independent living as an adult. The San Bernardino County Juvenile Court attempted to transfer his case to Kern County so that he could receive vital services near home. The Kern County Juvenile Court, however, immediately transferred the case back to San Bernardino County based on its disagreement with the San Bernardino court's findings regarding Andrew's place of legal residence. This transfer took place on February 2, 2012, and Andrew's ability to access services has been hampered for the past year.

This case is procedurally tangled. Kern County urges us to dismiss the appeal on nonsubstantive grounds. We decline to do so and conclude there is no obstacle that prevents this case from being decided now. The rejection of Andrew's transfer to Kern County made by San Bernardino County was erroneous and we order it be reversed.

As we will explain, two reasons warrant reversal. First, the Kern court could not simply reject the transfer because its understanding of the record differed from that of the San Bernardino court. It could have set a new transfer hearing based on new evidence or changed circumstances, if there had been any. Alternatively, the Kern County Department of Human Services could have appealed the San Bernardino court's order. The Kern court, however, could not simply overrule another juvenile court. In addition, the Kern court abused its discretion when it found retransfer to San Bernardino County to be in Andrew's best interest as there was no evidence in the record in support of this finding. To the extent the Kern court factored in the cost to the Kern agency of providing services to Andrew in deciding what was in Andrew's best interest, this was error.

The parties raised a third issue—whether Andrew is automatically made a resident of San Bernardino County by Welfare and Institutions Code section 17.1, subdivision (e). Our holdings on the other issues make it unnecessary to resolve this question.

### *FACTUAL AND PROCEDURAL HISTORIES*

Andrew was born on October 16, 1995. In 2005, when he was nine, a sheriff's deputy found him and one of his two sisters dirty and disheveled and locked out of their house in San Bernardino County. No adults were home

and the house lacked water service and heat. San Bernardino County Children and Family Services (the San Bernardino agency) investigated and found that the three siblings' mother was incarcerated on a charge of heroin possession. Andrew's assumed father, who had schizophrenia, was in prison serving a term of 25 years to life, and the whereabouts of the fathers of the two sisters were unknown. The children had been left in the care of one of the mother's friends and then another.

The San Bernardino agency filed a juvenile dependency petition. Ultimately, on January 10, 2007, the San Bernardino County Juvenile Court terminated both parents' parental rights. The court approved a permanent plan of adoption for Andrew. Beginning in December 2006, he was placed with Mr. and Mrs. D. as his prospective adoptive parents. Mr. and Mrs. D. are relatives of Andrew's former stepfather. We have not found in the record an indication of where Mr. and Mrs. D. lived when Andrew was placed with them, but by 2010 they lived in Kern County.

As might be expected of a child left an "orphan" at the age of nine by a drug-addicted mother and a mentally ill father, Andrew exhibited various behavioral problems over time. In 2006, the San Bernardino agency reported that Andrew was very bright, but was not doing well academically as he had difficulty focusing, was constantly off-task, and got into mischief often. By August 2007, when he was 11 years old, his condition had worsened. Mr. and Mrs. D. reported that he had been lying, stealing, and behaving aggressively toward them.

In December 2006, Mr. and Mrs. D. had said they would consider Andrew to be their child and would provide him with a permanent home, but eight months later they withdrew their offer to adopt Andrew and requested his removal from their home. Andrew was placed in a group home, with neither Mr. and Mrs. D. nor any other family available as a concurrent placement. In the group home, Andrew confronted issues of depression, separation, and loss. He was sometimes teased and made fun of, and on those occasions he mutilated himself with an object. He was failing all his subjects in school, refused to complete schoolwork assignments, and said he was afraid to ask for help. His sisters had been adopted by a family a long distance away and he was not being given the opportunity to visit them. He received residential treatment from a psychotherapist in the group home.

By July 2008, the behavior that led to his ejection from the home of Mr. and Mrs. D. was "ameliorating," but his academic performance was still

below state standards. A report prepared in May 2009 by a social worker at the group home indicated that Andrew related well with and was not aggressive toward other children. He generally followed adults' directions at the home, except that he often ran away from supervised areas, along with other children and would be missing for hours. He also received numerous detentions and suspensions at school for disruptiveness, cutting classes, and being late. He had difficulty completing his homework and was failing several classes. Andrew was diagnosed with depression and disruptive behavior disorder and was prescribed Wellbutrin, which was later discontinued because of negative side effects. An evaluation by a school psychologist found Andrew qualified for an individualized education plan (IEP).

In January 2010, Andrew was nearing age 15, the maximum age at his group home. No prospective adoptive family was available. The San Bernardino County Juvenile Court ordered a change in Andrew's permanent plan from adoption to "Planned Permanent Living Arrangement" (PPLA). A social worker for the San Bernardino agency then contacted Mr. and Mrs. D., who agreed to have Andrew return to live with them. He moved in with them in Kern County on October 1, 2010. By January 2011 they had again agreed to adopt him and he expressed his wish to be adopted. The court changed his permanent plan back to adoption.

The relationship between Andrew and Mr. and Mrs. D. again deteriorated. Andrew began smoking marijuana, stealing, lying about his whereabouts, defying instructions, and not completing school assignments. At the same time, Mr. D. became seriously ill. By January 2012, Mr. and Mrs. D. once more were unwilling to adopt Andrew, though they agreed to keep him in their home. The court changed Andrew's permanent plan back to PPLA and accepted the social worker's specific recommendation to modify the plan to "permanent placement with [the D.] family."

After returning to Mr. and Mrs. D.'s home in Kern County, Andrew continued to have behavioral and emotional difficulties. He was deficient in self-directed decisionmaking, had low self-esteem, experienced an excessive need to be accepted by peers, and had an overwhelming tendency to follow the lead of his peers regardless of the consequences. The social worker was concerned that some of his activities—the stealing and marijuana smoking—could lead to involvement with the criminal justice system. His academic performance was below state standards, and he failed two classes in 10th grade.

From Mr. and Mrs. D.'s home in Kern County, Andrew encountered severe difficulties in obtaining services through the San Bernardino agency to help him cope with his problems. The family had lost "a major portion of their transportation system," according to the social worker's report. Andrew's psychotherapy services were terminated because it was no longer possible for Mr. and Mrs. D. to drive him two hours to the therapist's office. As of January 2012, the San Bernardino agency's social worker had unsuccessfully attempted to obtain in-home psychotherapy for Andrew through the Kern County Mental Health Access Unit.

Andrew's court-appointed special advocate (CASA) attempted to obtain wraparound services for Andrew, but in January 2012 he wrote that, "because Andrew lives in a different county than the one his case originated in, funding has become a source of contention and services have yet to be provided."[1] The CASA also believed (1) it was important for Andrew to be referred to a CASA program in his area, (2) that "the family is unreasonably over-critical of Andrew," and (3) he needed a local advocate to voice his concerns.

For these reasons, in January 2012, the San Bernardino agency recommended that Andrew's case be transferred to Kern, the county in which Andrew had lived for over a year. At a hearing, the social worker stated that obtaining wraparound services was the primary reason for requesting the transfer. Andrew's counsel agreed that better services would be available to the family if the case were transferred. The court ordered the transfer on January 13, 2012, finding that Andrew's legal residence was the home of Mr. and Mrs. D. in Kern County and that the transfer was in his best interest. The court's order specifically called for wraparound services in Kern County.

The Kern County Juvenile Court set a transfer-in hearing for February 2, 2012. The Kern County Department of Human Services (the Kern agency) prepared a report for the hearing. The social worker who authored the report acknowledged that Andrew "does appear to be in need of services to assist in his behavior at this time." She implied that Andrew could receive services without the transfer, however, because the San Bernardino agency's last report had stated that "services are being sought through the child's school and via in-home psychotherapeutic services through SB 780." The report

---

[1] In one of its briefs, the San Bernardino agency explains that wraparound services means "intensive home-based therapy." Welfare and Institutions Code section 18251, subdivision (d), states that " '[w]raparound services' means community-based intervention services that emphasize the strengths of the child and family and includes the delivery of coordinated, highly individualized unconditional services to address needs and achieve positive outcomes in their lives."

omitted the fact that those efforts had not succeeded by the time the San Bernardino court issued the transfer order, and that the San Bernardino agency believed the transfer was necessary to obtain services.

The Kern agency's report also concluded that Andrew was a legal resident of San Bernardino County because his parents' parental rights were terminated in that county. The Kern agency relied on Welfare and Institutions Code section 17.1, which defines juvenile wards' counties of residence under various circumstances. The Kern agency's report asserted that retransfer to San Bernardino County was in Andrew's best interest. The only comments in the brief report that appear relevant to this assertion are that Andrew "maintains contact with several members of his biological family, including a sister who was adopted in San Bernardino County," and "[s]hould the child's current placement fail, it appears that it would then be in the child's best interests to place him back in San Bernardino County." The report concluded by recommending an immediate transfer of Andrew's case back to San Bernardino County.

The transfer-in hearing was very brief. Andrew was represented, for purposes of that hearing only, by the Kern County Public Defender's Office. Rather than articulating Andrew's interest in and arguing for his right to a transfer, Andrew's Kern County deputy public defender argued that Andrew could receive services in Kern County only via a contract between the two counties, not via a transfer of his case. Counsel said, "I just spoke briefly with [Mr. and Mrs. D.]. They wanted this case to be transferred to Kern County because they're actually interested in [wraparound] services for Andrew, although it's my understanding we always contract with other counties when we have children placed out of county, so there isn't—to me, I don't know of any barrier from that." Andrew's counsel also argued that the Kern agency was correct in its argument that Andrew was a resident of San Bernardino County under Welfare and Institutions Code section 17.1.

The Kern court granted the Kern agency's request to transfer the case back to San Bernardino County. The court's discussion was, in its entirety, as follows:

"I believe legally the recommendations are correct, and I will adopt them as follows:

"Proper notice has been provided to the child, [Andrew], and his caretakers. Transfer of the child's case is accepted from the County of San Bernardino.

"The child's legal residence is in the County of San Bernardino under Welfare & Institutions Code 17.1, subdivision (e). Transfer of the child's case is in the child's best interest.

"The child's case is transferred to the County of San Bernardino.

"All prior orders not specifically set aside or modified by this Court order are to remain in full force and effect."

Back in San Bernardino on February 22, 2012, at the hearing on the transfer back in from Kern, the court and counsel were puzzled.

"THE COURT: Well, what do we do with this?

"[Deputy county counsel]: Well, it's kind of strange. It does not seem right what Kern is doing because the interpretation would be that whenever parental rights have been terminated you can never transfer a case. It just does not seem accurate.

"But they're not accepting it, and we're willing to take it back, so I guess that's what we're doing.

"THE COURT: You know, the statute creates a problem because the kid lives in Kern County and, now, will get no services because they are unwilling to pay for it.

"Why doesn't somebody appeal that?

"I mean, the reality is Kern County did it wrong because the reality is that they should have accepted it and appealed my order. That would have been the proper mechanism. They chose not to do that. Now, Judge Stuebbe has sent it back to us.

"And my view is that it's not my place to overrule his order, that that is something that only the Court of Appeal can do, even though it makes no sense. [¶] . . . [¶]

"The problem is clear that the minor has nobody, except these people in Kern County. He lives in Kern County. So [they're] refusing to accept the case, the consequences are the minor will get no services. And, certainly, looking at the history, the recent history, the minor needs services. And that it's going to be denied. It makes no sense to me.

"It may be an issue with the [L]egislature because the statute is written in a way that has a gap in it in terms of what will happen for the benefit of the child, but from my perspective this Court can't really do that much with it.

"The Court will accept the transfer back. . . . It's saying the residency isn't where he lives. His residence is the County of San Bernardino because five years ago Judge McGuire terminated parental rights here.

"You know, maybe that is what the [L]egislature intended, but it certainly does not make any sense to me. So we have it back."

On March 5, 2012, Andrew filed a notice of appeal in the San Bernardino County Juvenile Court. The notice stated that the order being appealed from was the San Bernardino court's February 22, 2012, order accepting the transfer in from Kern County.

Andrew and the San Bernardino agency filed appellate briefs in the Fourth District Court of Appeal, Division Two. They agreed that the Kern County Juvenile Court had erred both procedurally and substantively in retransferring the case. Both parties' briefs asked the appellate court to reverse the Kern court's order and to cause the case to be transferred again to Kern County. The San Bernardino agency also argued that the Kern agency should be joined in the appeal as an indispensable party.

On August 1, 2012, after briefing in the Fourth District was completed, the California Supreme Court issued an order transferring the appeal from the Fourth District to this court. Nothing in the appellate record reveals whether the transfer was sought by a party or by the Fourth District on its own motion, or what the grounds were upon which the transfer was granted. Presumably, however, a transfer was deemed appropriate because, although Andrew's notice of appeal was filed in the San Bernardino court and referred to that court's order, the substance of both parties' briefs was that the Kern court erred. The San Bernardino court continued to be of the opinion that the case belonged in Kern County and merely acquiesced in the Kern court's ruling because it believed it had no choice.[2]

After the appeal was transferred here, the Kern agency filed a brief in this court arguing that Andrew appealed from the wrong order. The Kern court's transfer-out order is the real target of Andrew's appeal, but he filed his notice

---

[2] In addition, California Rules of Court, rule 5.610(i), provides that an appeal from a transfer order "must be filed in the transferring county." This rule deals specifically with appeals filed by county agencies rather than by wards, but it might reasonably be taken to express a general policy that if a transfer is erroneous, it is the order of the transferring court that ought to be appealed, not the order of the receiving court, which is essentially ministerial.

of appeal in the San Bernardino court and listed that court's transfer-in order as the order from which he was appealing. The Kern agency maintained that, because of this, we cannot address the merits of Andrew's claim that the Kern court erred, and the appeal should be dismissed. Consequently, the Kern agency contended, it was not an indispensable party. The Kern agency agreed that if we did reach the merits, it would be an indispensable party, and we should hold that the Kern court correctly ruled that Andrew's legal residence is San Bernardino County and did not abuse its discretion in finding the transfer back to be in his best interest.

The Kern agency's brief reveals the financial matter driving this procedurally complex case. The brief contains at least half a dozen references to the fact that if the case is transferred to Kern County, the Kern agency will have to provide Andrew services. If it is not, however, then the San Bernardino agency would have to contract for services in Kern County.

Andrew filed a brief in this court again arguing that he is a resident of Kern County and that the Kern court erred in rejecting his transfer. He also argued that his March 5, 2012, notice of appeal should be construed liberally to include an appeal from the Kern court's transfer-out order. In support of this contention, he submitted an amended notice of appeal, which was received in the clerks' office on October 18, 2012.

Another filing we received when the case was transferred to us is a letter from the Kern County Deputy Public Defender who represented Andrew at the February 2, 2012, hearing in the Kern County Superior Court. This letter expresses the attorney's opposition to the position her former client has taken in this appeal. She argues that it is in Andrew's best interest for the case to remain in San Bernardino County because "there are always time delays in accessing services for a child when a case is transferred between counties . . . ." The letter describes telephone calls the attorney made regarding services that might be available to Andrew without a transfer. One of these calls was to someone responsible for wraparound services in San Bernardino County, who said these services can be provided to wards residing outside the county "on a case by case basis," and that she would "discuss the situation with her supervisor" to determine whether providing services was "appropriate" in Andrew's case.

On October 16, 2012, we issued an order inviting respondents to brief the question of whether we should liberally construe the original notice of appeal to include an appeal of the Kern court's transfer-out order of February 2, 2012. We observed that the amended notice of appeal appeared to be untimely.

The Kern agency filed a brief arguing against liberal construction. The San Bernardino agency filed a brief arguing in favor of it. The Kern agency's brief once again stresses that the Kern agency should not be burdened with Andrew's case and the San Bernardino agency should have to contract to provide Andrew services in Kern County. It says that the "proper channels" for supplying services to Andrew in Kern County involve San Bernardino County contracting for those services, and it faults Andrew and the San Bernardino agency for "[f]ailing to understand or accept instruction" from Kern that Kern has no obligations and San Bernardino must contract for services.

## *DISCUSSION*

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Erroneous retransfer*

As we will explain in this part, the Kern court's order transferring Andrew's case back to San Bernardino County was erroneous for two reasons, one procedural and one substantive. The procedural error arose from the fact that the Kern court had no authority to retransfer the case merely because it disagreed with the San Bernardino court, with no change in circumstances or new evidence. The substantive error was that nothing in the record supported the court's finding that retransfer was in Andrew's best interest.

#### A. *Procedural error*

Andrew and the San Bernardino agency argue that the Kern County Juvenile Court lacked authority to retransfer Andrew's case immediately to San Bernardino County on the basis of its disagreement with the San Bernardino County Juvenile Court. The Kern agency argues that the Kern court either acted within its discretion or erred harmlessly. We agree with Andrew and the San Bernardino agency. Regardless of the substantive merits of the question of which county was the proper one for Andrew's case, the Kern court was not authorized simply to send the case back because it thought the other court was wrong based on the same record.

The procedures for transferring a juvenile case between counties, and for challenging a transfer order, are delineated in the California Rules of Court. If

---

*See footnote, *ante*, page 678.

the residence of a ward of a juvenile court changes, the court "may order the case transferred to the juvenile court of the child's residence . . . ." (Cal. Rules of Court, rule 5.610(c)(1).) If this happens, "the receiving county *must assume jurisdiction of the case* on receipt and filing of the order of transfer." (Cal. Rules of Court, rule 5.610(i), italics added.) Upon receiving the transfer-out order, "the receiving court *must accept* jurisdiction of the case. The receiving court *may not reject* the case." (Cal. Rules of Court, rule 5.612(a)(1), italics added.) Instead, a transfer-in hearing must immediately be calendared. (*Ibid.*) After that hearing, the receiving court must take the matter up where it left off in the transferring court: "The proceedings in the receiving court must commence at the same phase as when the case was transferred." (Cal. Rules of Court, rule 5.612(c).)

■ After the receiving court has accepted the transfer in, there are only two ways in which it can subsequently get rid of the case. First, it can hold a transfer-out hearing for the purpose of determining whether *new or different facts—facts other than those before the transferring court*—justify another transfer: "If the receiving court believes that a change of circumstances or additional facts indicate that the child does not reside in the receiving county, a transfer-out hearing must be held under rules 5.610 and 5.570." (Cal. Rules of Court, rule 5.612(f).) ■ Rules 5.610 and 5.570 permit a new order to be issued only if there are changed circumstances or new evidence and the new order would be in the child's best interest. (Cal. Rules of Court, rules 5.570(a)(7), (d), (e), (h)(1), 5.610(e).)

■ Second, the agency of either county can file an appeal from the original transfer-out order to the Court of Appeal. The receiving county is mandated to take responsibility for the case while the appeal is pending: "The order of transfer may be appealed by the transferring or receiving county . . . under rule 8.400. Notwithstanding the filing of a notice of appeal, the receiving county must assume jurisdiction of the case on receipt and filing of the order of transfer." (Cal. Rules of Court, rule 5.610(i).)

■ By their own terms, the rules just quoted consist of a list of the options for the receiving court and agency if they disagree with the transfer order: The court can hold *a separate hearing at a later time* to transfer the case back on the basis of *new evidence or changed circumstances,* and the agency can file an *appeal to the Court of Appeal* from the transfer-out order. The course taken in this case—immediately retransferring in the same hearing without any finding of new evidence or changed circumstances—is not an option. The only way the case could properly have been sent back to San Bernardino County based on the reasons the agency gave and the court relied on—disagreement with the San Bernardino court about residence and best interest—would have been by appeal to the Fourth District Court of Appeal

from the San Bernardino court's original transfer-out order of January 13, 2012. This appeal was not made and it is too late for it to be taken now.

The reason for the limitations set out in the California Rules of Court is self-evident. The two juvenile courts involved in the transfer proceedings cannot be granted the practical equivalent of mutual appellate jurisdiction over each other. That would obviously not be a workable rule of procedure, for it would keep children in limbo while counties volley them back and forth in an effort to resolve their differences. It also would be contrary to the legal system's fundamental interest in repose. Prohibiting the transferee court from undoing the transferor court's order unless there is new evidence or new circumstances prevents these results. The transferee agency's protection from error by the transferor court is found in the availability of an appeal to the Court of Appeal.

In *In re R.D.* (2008) 163 Cal.App.4th 679 [77 Cal.Rptr.3d 793], the Fourth District Court of Appeal confronted a similar situation. The Los Angeles County Juvenile Court transferred a ward to San Bernardino County after finding that the ward's legal residence was in the latter county. The San Bernardino County Juvenile Court disagreed on the residence issue and accepted the transfer for the sole purpose of immediately conducting its own transfer-out proceedings and sending the case back to Los Angeles County. (*Id.* at p. 683.) The Court of Appeal reversed the San Bernardino court's retransfer order. It stated, "If the receiving court disagrees with the findings underlying the transfer order, its remedy is to accept the transfer and either to appeal the transfer order, or to order a transfer-out hearing. [Citation.] The transfer-out hearing must be separate from the transfer-in hearing . . . ." (*Id.* at p. 685.) The San Bernardino court "[t]echnically . . . recited" that it was accepting the case from Los Angeles County before immediately proceeding to transfer it back, but, as here, that was not sufficient. (*Ibid.*)

For all these reasons, the error of the Kern court's February 2, 2012, transfer-out order has been established. The Kern agency argues, however, that any error was harmless because Andrew has not shown that the result would have been different "if the transfer-out hearing were simply held on a different day." We disagree. Although it is true that the Kern court did err in failing to hold a separate noticed hearing on a different day, the problem is not merely one of scheduling or notice. The Kern court had *no authority* to retransfer based on a mere disagreement with the San Bernardino court about Andrew's residence or best interest. It could set a transfer-out hearing and issue a transfer-out order *only* based on a change of circumstances or additional facts. No one claimed, and the court did not find, a change of circumstances or additional facts. To obtain a different outcome based on the same circumstances and facts, the Kern agency would have had *to appeal* the San Bernardino court's transfer-out order. It chose not to do so.

Whether the Kern agency intended it or not, its actions resulted in Andrew receiving no services from anyone for one year even as he now approaches the age of majority and becomes no longer eligible for services, which he clearly needs. We conclude that, absent the error, the Kern court could not properly even hold a transfer-out hearing, let alone issue a transfer-out order. The result would not have happened without the error and therefore the error is not harmless.

B.  *Best interest of the child*

Even if the Kern County Juvenile Court had possessed authority to retransfer Andrew's case as it did, we would still hold that the retransfer was reversibly erroneous. The court's finding that the retransfer was in Andrew's best interest was an abuse of discretion because no facts in the record supported it.

As we have pointed out, a transfer order can be issued only if the child's residence is in another county *and the transfer would be in the child's best interest.* (Cal. Rules of Court, rule 5.610(e).) The Kern County Juvenile Court made a formal determination that transfer back to San Bernardino County was in Andrew's best interest. We review this determination for abuse of discretion. The court acted within its discretion unless the ruling exceeds the bounds of reason. If the ruling is based on an inference that reasonably could be made from the facts, the existence of other reasonable inferences does not give us authority to substitute our decision for that of the trial court. (*In re R.D., supra*, 163 Cal.App.4th at p. 685.)

The evidence in the record does not support a reasonable inference that retransfer to San Bernardino County was in Andrew's best interest. All the evidence presented to the San Bernardino County Juvenile Court indicated that Andrew's access to services would be facilitated by the transfer to Kern County, where he lives. The only additional matter presented to the Kern County Juvenile Court was the Kern agency's four-page report. The only discussion in that report with any arguable bearing on the question of whether retransfer would be in Andrew's best interest was the following paragraph: "The child does appear to be in need of services to assist in his behavior at this time. The report of the San Bernardino Social Worker Robert Renner, Jr., dated December 22, 2011, indicates that such services are being sought through the child's school and via in-home psychotherapeutic services through SB 780. Additionally, the child maintains contact with several members of his biological family, including a sister who was adopted in San Bernardino County. Should the child's current placement fail, it appears that it would then be in the child's best interests to place him back in San Bernardino County."

Nothing in this paragraph actually supports the view that a transfer of the case back to San Bernardino County would be in Andrew's best interest. The paragraph acknowledges that Andrew needs services. The fact that the San Bernardino agency had not stopped trying to provide services to Andrew in Kern County does not undermine the fact that the Kern agency is better situated to do it. That Andrew was in contact with a sister living in San Bernardino County also has nothing to do with whether Andrew will be better served if his case is supervised by the county in which he lives. The possibility that someday it might be in Andrew's best interest to live in San Bernardino County also has nothing at all to do with whether he will be better served by having the Kern agency supervise his case under the actual plan. The actual plan, of course, is for Andrew to live in Kern County until adulthood.

No evidence was presented at the hearing. The only points discussed at the hearing were the views of both the Kern agency and Andrew's Kern County Public Defender. Both expressed their view that San Bernardino County was Andrew's legal residence despite his actual location in Kern County, and that San Bernardino County could provide services to Andrew in Kern County via contract.

On this record, the only reasonable inference is that it was not in Andrew's best interest for the case to be transferred back to San Bernardino County. Quoting another transfer case, the court in *In re R.D.* stated: " '[T]he focus of the proceedings should have been which county could best monitor the [child's] well-being and the suitability of [his] placement on a monthly basis, as well as keep tabs on [his] academic progress and other needs.' " (*In re R.D., supra*, 163 Cal.App.4th at pp. 687–688.) This did not happen here.

The Kern agency's paramount concern, both in the trial court and here, appeared to be avoiding financial responsibility for Andrew. In the Kern agency's main brief filed in this court, its primary argument under the heading of Andrew's best interest is that transfer was not "[n]ecessary" because the San Bernardino agency "could simply contract for services in Kern County." The question of which county ultimately will foot the bill for the services this child needs has nothing to do with his best interest. The issue is instead whether it will be better for Andrew to have his case managed locally or from a distance. The Kern County Juvenile Court ruled, in effect, that it will be better for him to have his case managed from a distance. The evidence does not support this position. Other things being equal, it will generally be the case that a ward's best interest will be served if he is a ward of the county in which he lives, not some other county.

The fact that cost-conscious agencies and courts take the financial burden imposed upon them into consideration when determining the best interests of children in transfer proceedings is not new. It appears to have been widespread at one time. In 1993, an amendment to California Rules of Court, rule 5.610, became effective, adding the sentence to subdivision (e) that provides that "[t]he court may not transfer the case unless it determines that the transfer will protect or further the child's best interest." (See Historical Notes, 23 pt. 1B West's Ann. Codes, Rules (2006 ed.) foll. rule 5.610, p. 585.) The Advisory Committee comment published with that amendment explains the problem: "Juvenile court judicial officers throughout the state have expressed concern that in determining whether or not to transfer a juvenile court case, the best interest of the subject child is being overlooked or at least outweighed by a desire to shift the financial burdens of case management and foster care. The advisory committee has clarified rule 5.610 in order to stress that in considering an intercounty transfer, as in all matters relating to children within its jurisdiction, the court has a mandate to act in the best interest of the subject children." (Advisory Com. com., 23 pt. 1B West's Ann. Codes, Rules, *supra*, foll. rule 5.610, p. 585.)

In summary, the Kern County Juvenile Court abused its discretion when it found that retransferring Andrew's case to San Bernardino County would be in Andrew's best interest. The record does not contain substantial evidence in support of that finding.

IV. *County of residence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The Kern County Department of Human Services is ordered joined in this action as an indispensible party. The notice of appeal filed on March 5, 2012, is deemed to include an appeal from the Kern County Juvenile Court's transfer-out order issued February 2, 2012. It is unnecessary to rule on Andrew's request for leave to file an amended notice of appeal.

The Kern County Juvenile Court's transfer-out order, issued February 2, 2012, is reversed. The San Bernardino Juvenile Court's transfer-out order issued January 13, 2012, and the Kern County Juvenile Court's transfer-in

*See footnote, *ante*, page 678.

order, issued February 2, 2012, are, therefore, now in effect. Andrew's case is now the responsibility of Kern County. The San Bernardino County Juvenile Court's order issued February 22, 2012, and accepting Andrew's transfer back, is vacated.

Levy, J., and Detjen, J., concurred.