Filed 10/22/13  In re Juan Z. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JUAN Z., a Person Coming Under the Juvenile Court Law. | B244507 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUTH Z.,<br><br>Defendant and Respondent;<br><br>JUAN Z.,<br><br>Appellant. | (Los Angeles County Super. Ct. No. CK94058) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Deborah Dentler, under appointment by the Court of Appeal, for Appellant Juan Z.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey M. Blount, Deputy County Counsel for Plaintiff and Respondent.

No appearance for Defendant and Respondent Ruth Z.

Minor Juan Z. challenges the dependency court's disposition order requiring him to remain in foster care, rather than returning him to the home of his mother and baby sister. We find no error under the circumstances and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

This dependency case involves two children of mother, Ruth Z. Juan Z. was born in June 2004. His younger half-sister, Ariana D., was born in March 2012. In June 2012, a domestic violence incident occurred during which J.D., mother's male companion and presumed father of Ariana, hit mother in the face several times with his fist, causing a swollen eye and lacerations. The Department of Children and Family Services (the Department) arranged for mother and both children to be placed at a battered woman's shelter. Juan appeared to be traumatized, jumping when someone entered the room where he was interviewed. He said he saw J.D. hit mother. He said J.D. hit him, and showed the worker a bruise on his chest which he said had been inflicted by J.D.

The original petition under Welfare and Institutions Code section 300[1] was filed on June 21, 2012. The petition alleged that J.D. physically abused Juan and that mother failed to protect Juan from this abuse; during a violent altercation with mother, J.D. knocked over Ariana's stroller causing the baby to hit the ground resulting in bruises; mother and J.D. had a history of violent altercations in the presence of the children; J.D.'s past and current abuse of alcohol rendered him incapable of caring for the children; and mother failed to protect them. It alleged the children came within the jurisdiction of the Department under section 300, subdivisions (a), (b), and (j). At the detention hearing, the court ordered the children to remain with mother.

The jurisdiction/disposition report recounted statements by Juan about J.D.'s physical abuse of him and his mother. He also said there were repeated fights between mother and J.D. Juan stated that J.D. drank a lot and got crazy. Mother denied that J.D.

---

[1] Statutory references are to the Welfare and Institutions Code.

hit Juan, but said that he hit her and knocked over Ariana's stroller. Mother declined to press criminal charges against J.D.

In an interim review report dated August 22, 2012, the Department informed the court of new information regarding Juan's aggressive acts toward Ariana. Mother told an investigator that she left Juan with Ariana while she stepped out to go to the kitchen. When she came back, she found Juan holding a pillow on Ariana's face. Mother said she screamed at Juan and asked him why he did this, but he did not respond. Mother reported the incident to her caseworker at the shelter and to the social worker. Mother was warned not to leave Juan alone with Ariana under any circumstances, to which she agreed. Juan was referred for individual counseling. When the Department investigator asked Juan about this incident, Juan said "'I put the pillow on her face because she has scratche[d] me twice on my face and I don't like it.'" He said that "something [in] his head told him to put the pillow on the face of the baby" and that was why he did it. He said this happened only once.

The Department filed a last minute information for the court on August 22, 2012 stating mother had reported a second incident in which Juan mistreated Ariana. She told the investigator that on August 18, 2012, she left Juan watching television and Ariana sitting in a swing in the same room while she went to cook in a nearby kitchen. While she was cooking, she heard Ariana. When mother checked on the children, Ariana was crying and had a purple bruise on her forehead. Juan told her he had put a stuffed teddy bear on Ariana's face, which caused the baby to cry. The investigator interviewed Juan. He said: "'I put the Teddy Bear on her face because she was crying too much and she did not let me hear my program. I was watching "Spongebob Squarepants."'" Juan said he left the teddy bear on the baby's face for "'[j]ust a little bit.'" At this time Juan had been participating in weekly individual counseling. The investigator recommended that Juan be referred for wraparound services[2]. An emergency team decision-making meeting

[2] "Welfare and Institutions Code section 18251, subdivision (d), states that '"Wraparound services" means community-based intervention services that emphasize

3

(TDM) was held to address concerns about the risk Juan posed to Ariana. During this meeting, mother reported that Juan had a history of aggression toward her as well. His aggressive behavior had increased since Ariana's birth. Mother was fearful that Juan might hurt Ariana during the night or when her attention was elsewhere, even for a moment. The team recommended that Juan receive intensive mental health services including wraparound and psychiatric evaluation to determine whether he required medication. Mother was unable to suggest an appropriate family member or friend to care for Juan. She said she wanted him to receive the evaluations and medications he needed. Juan was placed in protective custody in a foster home.

On August 28, 2012 the Department filed a petition pursuant to section 385 to detain Juan. The court granted the Department's petition, and ordered the Department to hold another TDM with mother and Juan's presumed father, Jose M., to develop a plan for Juan. The Department reported that the second TDM resulted in an action plan that required Juan to remain in foster care until his father produced four clean tests for drugs and alcohol. Jose M.'s home was to be assessed for placement. But mother did not agree with the action plan because she did not want Juan placed with Jose M. She preferred foster care unless Juan could be released to her. Juan was to continue with wraparound services. Juan's caretaker reported he was doing well in his placement, in school, and with other children in the placement. In a last minute information for the court on September 21, 2012, the Department reported that Juan wanted to live with his mother, but not with his father.

Mother and J.D. pleaded no contest to the petition as amended. Counsel for mother asked the court to return Juan to her custody. Counsel for Juan joined in her request. Jose asked the court to place the child with him. The Department opposed placing Juan in the same home as Ariana. Its position was that Juan required either therapeutic behavioral services or wraparound services. The court expressed empathy for

the strengths of the child and family and includes the delivery of coordinated, highly individualized unconditional services to address needs and achieve positive outcomes in their lives."' (*In re Andrew J.* (2013) 213 Cal.App.4th 678, 684, fn. 1.)

4

mother and for Juan. It was mindful of infant Ariana's inability to protect herself and mother's inability to continuously monitor Juan's interaction with the baby. For these reasons, the court ordered that intensive training be provided to Juan to avoid further incidents. Under section 361, subdivision (c), the court found by clear and convincing evidence that Juan should be removed from mother. Ariana was to remain with mother.

The court considered whether Juan should be placed with his father Jose, against whom there were no allegations. But Jose had not completed four clean tests for drugs or alcohol and had not visited Juan. Mother was moving to a location closer to Juan's school to facilitate visitation. Counsel for Juan opposed placement with Jose, expressing concern that another move would harm the child. The court ordered Jose and the Department to meet and confer after the hearing to arrange for father to complete the substance tests. Juan would be released to Jose if four clean tests occurred. The court noted that the wraparound services ordered for Juan were not in place until shortly before the hearing. It stated that the matter could be walked on to request Juan's return to mother if a safety plan had been established to eliminate the risks Juan posed to Ariana.

**DISCUSSION**

Both parties recognize a split of California authority regarding the standard of review of a dependency dispositional order. Some courts apply the substantial evidence standard (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Noe F.* (2013) 213 Cal.App.4th 358, 367) while others review the order for abuse of discretion (*In E.T.* (2013) 217 Cal.App.4th 426, 438–439; *In re A.S.* (2012) 205 Cal.App.4th 1332, 1340).

Juan's argument is that there was insufficient evidence that there was no reasonable means by which his health and safety could be protected without removing him from his mother's physical custody, or that the dispositional order constituted an abuse of discretion. He argues "[t]here were other far less draconian and traumatic means to protect Ariana from 8-year-old Juan's childish, impulsive attempts to silence her crying than to place Juan in a foster home." He contends the Department overreacted to Juan's behavior and that Ariana was not seriously harmed. He points to his ongoing

5

individual counseling and mother's enrollment in a domestic violence program. Juan asserts that both he and Ariana, victims of domestic violence, were further victimized by the order placing Juan outside the home.

Once a dependency petition has been sustained, the court must conduct a dispositional hearing to decide where the minor will live while under the court's supervision. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145.) "Before the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child. [Citations.]" (*Id.* at pp. 145–146.)

Juan argues the Department concluded that mother does not have sufficient parenting skills to protect Ariana, but that this does not constitute clear and convincing evidence of danger to the child sufficient to order Juan placed outside the home. He asserts that mother learned from the first two incidents. He also contends that there is no evidence that mother allowed him to harm the baby when she was present. He contends mother should have been allowed to monitor visits between the siblings.

The Department points out that there was no evidence that Juan had made progress in understanding the issues which put Ariana at risk of harm from his actions. Although a number of services had been ordered for Juan, they were not yet complete and no therapist had provided a letter assuring the court that Juan no longer posed a risk to his sister. It points out that the second incident occurred after mother had assured the Department that she would not leave Ariana alone with Juan. It also occurred after Juan had a month of individual counseling. The Department points out that mother expressed concern that Juan would harm Ariana while mother was sleeping or distracted. It contends removal of Juan from mother's custody was necessary to protect both children.

We agree with the Department. The two incidents were serious and placed Ariana at substantial risk of harm. Under either standard of review, we are satisfied that the

6

Department explored other possible means of assuring Juan would not harm Ariana. Two TDM meetings were held and multiple services were ordered for Juan. At the time the court made the dispositional order, there was no basis to conclude that Juan would not repeat his aggressive conduct toward Ariana or that mother would be able to avert another incident through constant supervision. We conclude that the requirements of section 361, subdivision (c) were satisfied and that there was no error in ordering Juan to out-of-home placement. The court provided an opportunity to revisit this issue by directing that counsel could walk on the case if new developments indicated that return of Juan to mother would be appropriate.

## DISPOSITION

The dispositional order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                        EPSTEIN, P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.