Filed 4/26/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Nia A. et al., Persons Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH & HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>K.L.,<br><br>    Defendant and Appellant. | A145684, A145969<br><br>(Marin County<br>Super. Ct. Nos. JV26111A, JV26112,<br>JV26113, JV26114, JV26115) |

K.L., single mother of the five minor children involved in these cases, appeals from orders of the Marin County juvenile court transferring these dependencies to Contra Costa County and denying a motion to reconsider that decision. All parties acknowledge the court erred by transferring the cases without considering whether transfer was in the children's best interests. Nonetheless, respondent Marin County Health and Human Services Department (the Department) asserts we should affirm the transfer orders because Contra Costa Children & Family Services (Contra Costa CFS) is now providing services and returning the case to Marin County would further delay the dependency proceedings. We are not so persuaded. The orders are reversed and the cases remanded to Marin County.

## BACKGROUND

At the time of these events, the children ranged from 8 to 15 years old.  The family lived primarily in Marin County from around 2000 until they moved to Richmond in 2009.

Mother for years has struggled with abusive relationships, homelessness and unemployment.  Although child welfare records show a lengthy history of referrals alleging general neglect and physical, emotional and sexual abuse, the current dependencies represent the first time petitions were filed on behalf of the children.

In late 2014 Mother lost her job and was evicted from her Richmond home for nonpayment of rent.  After plans for a new home fell through, Mother stayed with the younger children in motels while the oldest daughter, 15-year-old Nia, moved in with a maternal aunt.  By January 2015 Mother had exhausted her resources and could not find a shelter that could accommodate her and her family.  Unable to provide care for her younger children, Mother asked Contra Costa CFS to place 12-year-old Aaliyah, 11-year-old Spencer, 10-year-old Sidney and 8-year-old Skylar in foster care while she pursued employment and stable housing.

Contra Costa CFS placed the four younger children in foster care and filed petitions alleging Mother's failure to protect and inability to provide support for all five children.  All five children were detained.  The court ordered two supervised visits per month and ordered Contra Costa CFS to refer Mother to substance abuse treatment and parenting education.  On March 9, 2015, Mother admitted the allegations after the petitions were amended to delete an allegation that she was unwilling, as opposed to unable, to provide for the children's care.  The court sustained the petitions as amended.

An April 8, 2015 memorandum from Contra Costa CFS reported that Mother had obtained transitional housing in Marin County and expected to soon secure a studio apartment where she could live for up to two years while she looked for more permanent housing with space for her children.  She had identified several resources for individual and family counseling, reconnected with advocates and resources she believed would help her with reunification, and was working intermittently through a temporary

2

employment agency.  Aaliyah, Skylar and Sidney had been placed together in a foster home in Solano County.  Spencer was in foster care in San Joaquin County due to behavioral problems, while Nia continued to live with her aunt in Richmond.  Mother was "confident that services in [Marin] would be immensely helpful as she works to have her children safely placed back in her care.  Mother was also able to demonstrate key insights into her family's dynamics, including mental health and behavioral needs, and identified areas where she is most in need of assistance."  Visitation was going well.

On April 24, Contra Costa CFS filed a disposition report.  The social worker recommended that the court order family reunification services for Mother and transfer the case to Marin County.  Mother was participating in voluntary services including 12-step meetings, counseling, and alcohol abuse education in Marin.  She expected to secure a studio apartment in Marin through the Next Key program.

Despite serious concerns about Mother's housing situation and her ability to cope with her children's emotional problems, Contra Costa CFS reported that Mother had "proven herself to be a very strong advocate for her children and has been proactive in identifying services to help them, particularly Spencer and Sidney.  Prior to the children's placement in foster care, she had them enrolled in appropriate schools, was in receipt of Wraparound services and appeared to make good use of the resources available to her and the children.  She has decided that it would be in her children's respective best interests to move back to Marin County, where services are more readily available.  She is currently residing in Novato, California and has already begun looking into community based social service and counseling organizations that will be able to provide services to her and the children.  Mother is very eager to resolve the family's problems so she can have the children placed back in her care and the Bureau contends that her receipt of Family Reunification services in her current county of residence is in the children's best interests."

On April 24, the Contra Costa court transferred the matter to Marin County.  The Marin County court noted Marin was Mother's county of residence, accepted the transfer on May 7, and continued the case for a case plan review.

On June 17, the Department asked the Marin court to transfer the children's cases back to Contra Costa County because it had "recently discovered that this case is sensitive, meaning that a county employee has a familial relationship to some of the parties involved, which renders the Department unable to continue to render services." An expedited hearing was held the following day. The Department explained it had discovered that one of its employees was related to three of the children through their deceased father and had been contacted by a family member seeking information about placement. Marin County social worker Rosie Hernandez explained that the Department has a strict policy requiring transfer of any case when someone in the office is related to the child or children involved.

Mother strenuously opposed the transfer, which she argued would create hardship for her and the children. She explained that she was living, working and participating in voluntary services in Marin, so "[i]f it goes back to Contra Costa, I would have to turn down work assignments, lose income and stability in order to meet the Court obligations in Martinez." Nor was there any evidence that the proposed transfer served the children's best interests. Contra Costa CFS had failed to provide adequate services before the initial transfer, and once the cases were sent to Marin it caused further delay by failing to provide the Department with case information. Only one of the children, 15-year-old Nia, was living in Contra Costa County, and none of them had contact with the side of the family purportedly related to the unidentified department employee. Moreover, nearly two months after the transfer to Marin "[M]other still doesn't have a case plan here or been provided with any services, and now it's going to transfer again, and that's going to result in yet another delay in services. . . . It could take any length of time for Contra Costa County to actually accept the transfer, to assign a worker to it, and she's just going to be back in the same place that she was almost two months ago, which was not in a good position, this case was not in good condition when it came to our County in the first place."

The Department did not dispute any of Mother's characterizations of events. Its position, rather, was that its policy of transferring "sensitive cases" was compelled by

4

concerns about possible breaches of confidentiality. The court agreed. It explained: "I think under the structure that's at issue, confidentiality, the Court—the Court is not going to leave the case in Marin. I'm uncomfortable with some of the information that I've heard in terms of an individual there at the Department, now having been identified, that—that—that bothers me. But it would be much more of a larger problem if confidentiality—if the risk of confidentiality was not removed, and the only way it appears to the Court that I can remove that risk is return it to Contra Costa." The court urged the Department and Contra Costa CFS to provide Mother with appropriate services to "relieve some of the burden . . . that this will cause for her in returning this case to Contra Costa," instructed the Department to respond to her calls despite its classification of her case as "sensitive," and set a status update for July 6.

Mother moved for reconsideration on the ground, inter alia, that the court's ruling was predicated on the Department's alleged conflict rather than her children's best interests. At the hearing on Mother's motion, Department program manager Bree Marchman testified to the Department's strict policy of transferring cases to other counties whenever its employees or employees of other county agencies have some connection to the family at issue. She explained the policy, the "Bay Area Intercounty Sensitive Case Protocol," was developed to identify "sensitive" cases to be handled by out-of-county agencies to maintain case and staff confidentiality. A "sensitive" case is "one where the children in the referral, the parents in the referral, one of the main clients, is somehow connected to someone in our office, or at times someone in the larger county, employed by the County of Marin." The criteria for classifying a case as sensitive include: "someone who is a staff person in the child welfare office; a spouse of a staff person; a domestic partner of a staff person; a family member of a staff person; a friend; a child of a staff person; an associate of a staff person in a business sense. [¶] A county employee in the larger county, if they were a client. . . ; a person who has a close working relationship with child welfare services, so maybe not a county employee, but maybe an agency we work with all the time; a law enforcement employee; a person who has high political visibility or a public official. Sometimes a high-profile case where there's media

5

involvement could be considered sensitive, and there are other options that may arise that might not be covered here." It was not uncommon for the Department to transfer "sensitive" cases to other counties. "[T]his is not an unusual occurrence for us. [¶] It's a shame that it has an impact on the family, but ultimately, it's more important to us to make sure that everything is clean, careful, everyone can kind of maintain their confidentiality as they deserve to."

In this case, the "sensitive case" determination was made after a paternal relative contacted a Department visitation supervisor about the case. The supervisor testified that his father's cousin was the paternal grandfather of three of the children. He had no contact with the children in the four years since their father died, did not know them or spend time with them, did not know Mother, and would not recognize her if he saw her. He testified that he would never violate Department confidentiality by accessing or disclosing case information or otherwise involving himself in Mother's case.

The court expressed concerns about "where the children are going to be living and how they are being treated in Contra Costa, and I haven't heard any information very positive about whatever was going on in Contra Costa. . . . it all seems to be fairly negative about whatever services they were to obtain in Contra Costa, they're not getting them. It concerns me that if they're going back to that county, that the services still might not be provided to them appropriately." Nonetheless, it found the case was "sensitive" due to the visitation supervisor's familial relationship to the children. Despite acknowledging that "it's not a good thing for us to return children to a county where we already know they don't respond very properly," the court reaffirmed its decision to transfer the case to Contra Costa County pursuant to the sensitive case protocol, with the proviso that Marin "would have to find another county for them if Contra Costa doesn't work."

Mother filed this timely appeal.

6

## DISCUSSION

Mother argues, and the Department concedes, that it was error to transfer the case to Contra Costa County without determining that the transfer would serve the children's best interests.[1] We agree.

The intercounty transfer of juvenile cases is governed by Welfare & Institutions Code section 375, subdivision (a) and rule 5.610 of the California Rules of Court.[2] Under specified circumstances, section 375 permits a court to transfer a juvenile case to the county where the parent resides. It provides in relevant part: "[W]henever, subsequent to the filing of a petition in the juvenile court of the county where that minor resides, the residence of the person who would be legally entitled to the custody of the minor were it not for the existence of a court order issued pursuant to this chapter is changed to another county, the entire case may be transferred to the juvenile court of the county where that person then resides. . . ." Conversely, rule 5.610 permits a juvenile court to transfer a case to the county where the child resides.

In either situation, the law indisputably directs that the paramount consideration is whether the proposed transfer will serve the child's best interest. (*In re Andrew J.* (2013) 213 Cal.App.4th 678, 693; *In re R.D.* (2008) 163 Cal.App.4th 679, 685; *In re J.C.* (2002) 104 Cal.App.4th 984, 993-994; *In re Christopher T.* (1998) 60 Cal.App.4th 1282, 1291; see also §202, subd. (b) ["juvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law shall consider . . . the best interests of the minor in all deliberations pursuant to this chapter"].) Accordingly, "[T]he court *must* consider whether transfer of the case would be in the child's best

---

[1] Although the printed order referenced the children's best interests and the court orally recited that their best interests would be served by the transfer, it is clear from the court's oral explanation that its ruling was based rather on the Department's confidentiality concerns. "When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls." (*People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073.)

[2] Unless otherwise noted, further statutory citations are to the Welfare & Institutions Code. References to rules are to the California Rules of Court.

interest.  The court *may not transfer the case unless it determines that the transfer will protect or further the child's best interest.*"  (Rule 5.610(e), italics added.)  To the extent the Department's "sensitive case" protocol purports to authorize courts to transfer juvenile cases without first concluding that the proposed transfer is in the child's best interest, it is inconsistent with controlling law and, therefore, invalid.  "A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the California Constitution or case law."  (*In re A.L.* (2014) 224 Cal.App.4th 354, 363–364].)

Here, the Department advocated for the transfer because an employee's attenuated relationship to the family automatically triggered its internal "sensitive case" protocol.  By its own admission, "[i]t's not the specific facts of any case, but it's the possibility of interference when the social workers are working in the best interests of the child."  "[T]he Department's position is that this situation is not about how close the relative is that determines the level of sensitivity.  It's not about an actual conflict.  It's about a potential conflict.  It's not about the employee's ability to actually access information or actually pull strings. [¶] We, the Department, strongly believe that we cannot put employees in this situation."

The Department's transfer request was also "not about" whether it was in the children's best interests to return the case to Contra Costa County.  The court acknowledged as much when it granted the transfer on the strength of the Department's confidentiality concerns, without evidence that their best interests would be served by the transfer and despite its stated concerns that Contra Costa County had failed to provide adequate services before the case was moved to Marin. "Obviously, for a family, that's very—all of that's very disruptive, but at the moment, I don't have—the confidentiality is a key issue, and so I am going to return it to Contra Costa."  In so ruling, the court erroneously prioritized the Department's "100 percent abiding concern about confidentiality" over its obligation to serve the best interests of the children.

The Department concedes that this was error.  Nonetheless, it urges us to either affirm the transfer or remand the cases to Contra Costa County because (1) following the

transfer, the Contra Costa court found that Contra Costa CFS was providing reasonable services;[3] and (2) returning the case to Marin would cause delay, which "is inherently prejudicial to the child." Missing from the Department's briefs is any plausible suggestion that the conceded error was harmless, a point Mother reasonably disputes on the ground that having the case managed remotely from Contra Costa County is impeding her ability to obtain services and pursue family reunification. We agree with Mother that meaningful relief may only be obtained, if at all, by reversing the erroneous transfer order and returning the case to Marin County. It will be up to the Department to fashion a legally permissible method to address any actual confidentiality issue it believes to be posed by its employee's relationship to the family—a method, we hasten to emphasize, that is based on the particular circumstances of this case and accords the requisite priority to the children's best interests in light of their circumstances at that time.

Because the court's failure to consider the children's best interests independently requires reversal, we have no reason to address Mother's argument that the transfer was also erroneous because neither she nor the children qualified as residents of Contra Costa County.

Given the substantial delay already caused by the improper transfer, Mother asks this court to, essentially, order the Marin court to re-start her reunification period upon remand. She cites no authority that would authorize us to take such an action, and we are aware of none. We urge, however, that upon remand the court and Department make every possible effort to ameliorate the effects of any delay already occasioned by the transfer.

---

[3] At the Department's request, we take judicial notice of the facts that the Contra Costa Court held a six-month review hearing on October 19, 2015 and made a finding that reasonable services had been offered or provided. (Evid. Code, § 452, subd. (d).) To the extent the Department asks us to judicially notice anything beyond those facts, the request is denied. (See *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.)

9

## DISPOSITION

The Department's motion to dismiss the appeal as moot is denied. The orders transferring the case to Contra Costa County and denying reconsideration are reversed and the children's cases are remanded to the Marin County juvenile court.

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Pollak, J.

Trial Court:                                                        Marin County Superior Court

Trial Judge:                                               Honorable Faye D'Opal

Michelle E. Danley, under appointment by the Court of Appeal, for Objector and Appellant.

Steven M. Woodside, County Counsel, Ellen Forman Obstler, Deputy County Counsel, for Petitioner and Respondent.