Filed 3/15/13  E.T. v. C.T. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| E.T.,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>C.T.,<br><br>  Defendant and Appellant. | D059280<br><br>(Super. Ct. No. EV17285) |
| In re the Marriage of C.T. and E.T.<br><br>C.T.,<br><br>  Petitioner,<br><br>  v.<br><br>E.T.,<br><br>  Respondent. | (Super. Ct. No. D517239) |

APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed.

I.

INTRODUCTION

E.T. and C.T. were married until March 2010, and have two children—S.T., born in 1996, and T.T., born in 2002.[1] In September 2010, E.T. filed a request for a domestic violence prevention restraining order against C.T.[2] In a responsive declaration, C.T. denied E.T.'s allegations of recent abuse and stated that E.T. was permitting S.T. to live in Australia without his permission. At a November 2010 hearing on E.T.'s request, E.T.'s counsel acknowledged that S.T. had been living in Australia since June of 2010, but claimed that C.T. had given his written consent for S.T. to do so. In response, C.T. acknowledged that he had given his consent for S.T. to take a vacation in Australia, but insisted that he had not given his consent for S.T. to "go to school or to live" there.[3] The trial court stated that its "perception of the credibility" of the parties in connection with respect to E.T.'s request for a restraining order would be "substantially influenced by whether or not [C.T.] gave his permission for S.T. to live in Australia." The court continued the hearing on E.T.'s request for a restraining order, and directed E.T. to provide the court with evidence of C.T.'s "authorization for [S.T.] to live in Australia."

---

[1]    In accordance with our customary practice of protecting the identity of minors involved in appellate court proceedings, we refer to the individuals involved in this case by their initials.

[2]    The trial court consolidated the domestic violence proceeding (case No. EV17285) with the parties' pending child custody proceeding (case No. D517239).

[3]    Counsel represented E.T. at the proceedings in the trial court, while C.T. acted in propria persona.

2

E.T. subsequently lodged with the court a document that reflected C.T.'s consent for S.T. to "travel[]" to Australia. At the continued hearing, E.T.'s counsel argued that at the November hearing, C.T. had denied having given permission for S.T. to "go to Australia." E.T.'s counsel further argued that E.T. had produced evidence demonstrating that C.T. had not been truthful in claiming that he had not given permission for S.T. to live in Australia, a fact that counsel contended "should certainly weigh against [C.T.'s] credibility." C.T. responded that he had never denied having granted permission for S.T. to *travel* to Australia, and stated that the dispute at the prior hearing had centered on whether he had granted permission for S.T. to *live* in Australia. The trial court stated that it could not "recall the finite details" of the November hearing, but added that it would draw "inferences adverse to [C.T.'s] credibility," and would grant E.T.'s request for a restraining order.

On appeal, C.T. claims that the trial court erred in granting E.T.'s request for a restraining order. C.T. argues that the court based its ruling on the mistaken belief that C.T. had denied having granted permission for S.T. to *visit* Australia, when, in fact, the parties' dispute at the November 2010 hearing centered on whether C.T. had granted permission for S.T. to *live* in Australia. C.T. also maintains that the trial court had ordered E.T. to present evidence that C.T. had granted permission for S.T. to *live* in Australia, and that E.T. failed to present such evidence.[4]

---

4       While this appeal was pending, E.T.'s counsel was suspended from the practice of law. We granted E.T. an extension of time to file a respondent's brief, but she has not

3

We agree with C.T. that the record unambiguously demonstrates that the trial court granted E.T.'s request for a restraining order based on a material misunderstanding of the facts in the case. We reverse the order granting E.T. a permanent restraining order and remand for further proceedings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2010, E.T. filed a request for a domestic violence prevention restraining order against C.T. In her request, E.T. asked that C.T. be restrained from having contact with her, S.T., and T.T. In a declaration lodged with her request, E.T. stated that C.T. had perpetrated domestic violence on her during their marriage, including an incident in 2006 during which C.T. threatened her with a hunting knife and threw her to the ground. E.T. also alleged that later in 2006, while she was recovering from abdominal surgery, C.T. forcibly removed her from a vehicle and threw her to the ground. E.T. also alleged that C.T. had verbally abused her approximately two days prior to her filing the request for a restraining order. ET claimed that C.T. yelled at her in front of T.T. after one of T.T.'s football games. E.T. stated that she attempted to walk away with T.T., but that C.T. followed her and continued to yell E.T.'s name. E.T. stated that, upon returning home, she contacted the police, who advised her to seek a restraining order.

---

done so. Accordingly, we decide the appeal based on the record, C.T.'s opening brief, and C.T.s' oral argument. (See Cal. Rules of Court, rule 8.220(a)(2).)

Together with her request for a restraining order, E.T. filed a request to modify a child custody order granting C.T. and E.T. joint legal and physical custody over S.T. and T.T. E.T. requested that the court grant her sole legal and physical custody of both children. In her request to modify child custody, E.T. stated that S.T. lived with her, and that she and S.T. had lived at the same address since March 2008.

In October 2010, C.T. filed an answer to E.T.'s request. In an accompanying declaration, C.T. denied E.T's allegations of recent abuse[5] and stated that E.T.'s request was "based solely on past events." C.T. also stated that "[i]t should be noted that in her declaration [E.T.] does not even tell the court my daughter [S.T.] is no longer living in the country and has been sent to live with relatives in Australia[,] but states both children reside with her." C.T. also alleged that E.T.'s request was "obviously retaliation to my insistence that I be allowed access to my children in conformity with a legitimate court order and my protest to my daughter being sent to Australia to live with relatives." With respect to S.T.'s current residence, C.T. stated:

> "My daughter [S.T.] was sent to Australia back in June by her
> mother [E.T.]. The representation at the time was [S.T.] was to only

---

[5] With respect to the allegations of recent abuse, C.T. stated in relevant part:

> "At the end of the game I walked up to my son and tried to speak
> with him. At that point, [E.T.] came up and grabbed him by the arm
> and neck and started physically pulling him away. My son was
> obviously upset over both his mother's interference with me
> speaking to him and the physical attack by his mother for doing so.
> [¶] I asked her what she was doing and to let me talk to my son[.]
> [S]he replied no [*sic*] to me and continued to take him to the parking
> lot. I yelled out 'I was going to call the police.' She went to the
> parking lot[.] I did not follow her to her car or call her that day."

5

go for a vacation and return before the start of the next school year in August 2010.  [S.T.] flew out to Australia in June and her mother and brother were to fly out a month later to meet her.  At the end of July my daughter called me and informed me her mother was leaving her in Australia with her grandmother, and my son [T.T.] and his mother were flying back [to] the States without her.  [¶]  I did not agree to my daughter living in Australia.  I tried to talk to E.T. about my protests and bringing my daughter back, but she refused to talk to me about the matter."

C.T. requested that the court deny E.T.'s request for a restraining order, that the existing joint custody order remain in effect, and that S.T. be ordered to return to San Diego.

On November 2, 2010, the trial court held a hearing on E.T.'s request for a restraining order.  The trial court began the substantive portion of the hearing by asking E.T.'s counsel where S.T. was currently living.  E.T.'s counsel responded that S.T. had been living in Australia since June 20, 2010.  The trial court asked E.T.'s counsel whether there was a written agreement executed by C.T. reflecting C.T.'s authorization for S.T. to live in Australia.   E.T.'s counsel indicated that he believed that there was such a document.  C.T. acknowledged having given his consent for S.T. to travel to Australia for a vacation, but insisted that he had not consented to S.T. living in Australia.

The trial court stated that there was a "material conflict" with respect to the parties' representations as to whether C.T. had granted his consent for S.T. to live in Australia, and that the court's "perception of the credibility by [*sic*] either party in connection with . . . [E.T.'s] application for [a] permanent restraining order . . . will be substantially influenced by whether or not [C.T.] gave his permission for [S.T.] to live in Australia."

6

The court continued the hearing and directed E.T. "to provide the court with evidence of [C.T.'s] authorization for [S.T.] to live in Australia."

On November 10, the court received from E.T. an "Overseas Passport Application," signed by C.T. The application states in relevant part, "I consent to . . . [S.T.] travelling internationally."

On December 7, 2010, the trial court held another hearing on E.T.'s request for a restraining order. At the hearing, E.T.'s counsel stated that at the last hearing, "there was some question about whether [C.T.] had granted permission for [S.T.] to go to Australia" and that C.T. had denied having given permission for S.T. to go to Australia. E.T.'s counsel further argued that E.T. had lodged with the court a document that reflected that C.T. had granted such permission. In response, C.T. argued that he had not given permission for S.T. to live in Australia, and that he had given permission only for S.T. to visit relatives there.

The trial court indicated that it could not "possibly recall the finite details of how it unfolded," but asserted that C.T. had previously denied signing a passport application. The court stated that it would therefore draw "inferences adverse to [C.T.'s] credibility," and would grant E.T.'s request for a restraining order. The court added that "the only party who is to be protected on the restraining order is [E.T.]," and that "[t]he court specifically does not include the children as protected parties." With respect to E.T.'s request to modify custody, the court ruled that the parties were to "continue to practice the terms and conditions of their existing parenting plan," which provided for "[v]isitation . . . [to] be arranged by mutual agreement of the parties." The court stated

7

that it would set a follow up hearing for the purpose of "develop[ing] a detailed parenting plan on when the parties are to have the children in their care."[6] (RT 15, 18-20)!

That same day, the trial court entered a domestic violence prevention restraining order, prohibiting C.T. from having any contact with E.T. for a period of three years.  The restraining order permits C.T. to have "brief and peaceful contact as required for court-ordered visitation of children. . . ."

In January 2011, C.T., through counsel, filed a motion for reconsideration.  The record on appeal does not contain a ruling on C.T.'s motion for reconsideration.[7]

In February 2011, C.T. timely appealed the December 7, 2010 restraining order.[8]

---

[6]     The record does not include any rulings pertaining to this hearing.

[7]     The record does contain a February 22, 2011 stipulation entered into between counsel for the parties continuing the hearing on the motion for reconsideration for a period of 45 days.

[8]     A domestic violence prevention restraining order "is separately appealable as an order granting an injunction (see Code Civ. Proc., § 904.1, subd. (a)(6))."  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1257-1258.)

8

III.

DISCUSSION

*The trial court abused its discretion by granting E.T.'s request for a restraining order based on a material misunderstanding of the facts in the case*

C.T. argues that the trial court abused its discretion in granting E.T.'s request for a domestic violence prevention restraining order.

A.      *Governing law and standard of review*

In *S.M. v. E.P., supra*, 184 Cal.App.4th at page 1264, this court outlined the law governing the issuance of a domestic violence prevention restraining order:

> "Pursuant to the Domestic Violence Prevention Act (DVPA) ([Fam. Code,] § 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved.  [Citation.] . . . [¶]  The DVPA defines domestic violence as 'abuse' perpetrated against enumerated individuals, including a former spouse or cohabitant.  [Citation.]  'Abuse' means any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury[;] [¶] (b) Sexual assault[;] [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[;] [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to [Family Code] Section 6320.[9]'  [Citation.]"

---

9       "[B]ehaviors outlined in section 6320 include 'molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members.'  [Citation.]"  (*S.M. v. E.P., supra*, 184 Cal.App.4th at p. 1264.)

The *S.M. v. E.P.* court also outlined the applicable standard of review to be applied by this court on appeal:

> " 'A grant or denial of injunctive relief is generally reviewed for abuse of discretion. [Citation.] This standard applies to a grant or denial of a protective order under the DVPA. [Citation.]' [Citation.] However, '[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the " 'legal principles governing the subject of [the] action. . . .' " ' [Citations.]" (*S.M. v. E.P., supra*, 184 Cal.App.4th at pp. 1264-1265.)

Our recognition in *S.M. v. E.P.* that a trial court's discretion to grant a domestic violence prevention restraining order is not unlimited, is consistent with the more general principle that, " '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue' [citation]." (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) In other words, the abuse of discretion standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

"In conducting our review for an abuse of discretion, we determine 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.]" (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 384.) "A discretionary ruling predicated on a required finding of fact is necessarily an abuse of discretion if no substantial evidence supports the fact's existence. [Citations.]" (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 531.)

10

More generally, a trial court's ruling constitutes an "abuse of discretion [where] no facts in the record support[] it." (*In re Andrew J.* (2013) 213 Cal.App.4th 678, 692.)

B.      *Application*

The record unambiguously demonstrates that the trial court granted E.T.'s request for a restraining order based on a fundamental misconception as to the nature of the parties' dispute at the November 2010 hearing and the state of the evidence. At the November 2010 hearing, C.T. acknowledged having given permission for S.T. to *travel* to Australia for a vacation, but denied that he had given permission for S.T. to *live* in Australia.[10] Further, at the November 2010 hearing the court ordered E.T. to present evidence that C.T. "gave his permission for [S.T.] to *live* in Australia." (Italics added.) In response to the court's order, S.T. submitted evidence that C.T. had granted permission for S.T. to merely "*travel*[]" to Australia. (Italics added.) Nevertheless, at the December 2010 hearing, the trial court improperly found that E.T. had complied with the court's order based on the court's mistaken belief that C.T. had denied having given permission for S.T. to *travel* to Australia.[11] Neither the trial court's finding that E.T. complied with

---

10      Similarly, in his October 28, 2010 responsive declaration, C.T. stated, "[S.T.] was sent to Australia back in June by her mother," based upon "[t]he representation . . . [that] [S.T.] was to only go for a vacation and return before the start of the next school year in August 2010." C.T. continued, "I did not agree to my daughter living in Australia." Further, E.T.'s September 13, 2010 request to modify custody was materially inaccurate in stating that S.T. currently lived with E.T.

11      The trial court was misled by E.T.'s counsel's inaccurate statements that the dispute at the November 2010 hearing focused on whether C.T. had granted his permission for S.T. to "*go to*" Australia, and counsel's suggestion that C.T. had denied having signed a passport application granting S.T. permission to travel to Australia. Both

11

the court's order to provide a document demonstrating that C.T. "gave his permission for [S.T.] to *live* in Australia" (italics added) nor its finding that C.T. had denied granting S.T. permission to *travel* to Australia is supported by substantial evidence. Further, the record indicates that the court expressly granted E.T.'s request for a restraining order based on the unsupported adverse credibility determination that the court drew.

Under these circumstances, we conclude that the trial court abused its discretion in issuing the restraining order. We remand the matter to the trial court for a reevaluation of E.T.'s request for a restraining order, in light of a full reconsideration of all of the relevant facts, including those discussed in the preceding paragraph.

IV.

DISPOSITION

The trial court's December 7, 2010 domestic violence restraining prevention order is reversed. The matter is remanded to the trial court with directions to conduct further proceedings consistent with this opinion. C.T. is entitled to costs on appeal.

AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

statements approached, if not crossed, the line dividing zealous advocacy and deceptive litigation tactics.

12