Filed 7/16/21  In re F.N. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re F.N., a Person Coming Under the Juvenile Court Law. | D078573 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J520491) |
| Plaintiff and Respondent, | |
| v. | |
| M.N., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Reversed and remanded with directions.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of County Counsel, Caitlin E, Rae, Chief Deputy County Counsel and Georgia Braun, Deputy County Counsel for Plaintiff and Respondent.

M.N. (Mother) appeals from a January 2021 jurisdiction/disposition hearing under Welfare and Institutions Code[1] sections 300 regarding her son F.N. Mother challenges the juvenile court's November 2020 finding that there was no reason to know that F.N. was an Indian child under the Indian Child Welfare Act (ICWA), title 25 United States Code section 1901 et seq., and section 224 et seq. She also contends the San Diego County Health and Human Services Agency (Agency) was required by section 224.2 subdivision (f) and section 224.3, subdivision (a)(1) to provide formal notice to three Indian tribes, which she contends the Agency failed to do. We conclude the Agency was not required to make formal notice to the three Indian tribes. Nevertheless, because we determine there is an apparent error or inconsistency in the juvenile court's January 21, 2021 minute order regarding applicability of ICWA to these proceedings, we conditionally reverse and remand to the juvenile court with direction to clarify its finding as to whether ICWA applies.

PROCEDURAL AND FACTUAL BACKGROUND

Because Mother does not substantively challenge the juvenile court's jurisdiction/disposition findings, we restrict our recitation of the facts to those relevant to the limited issues on appeal regarding compliance with ICWA.

In March 2017, the San Diego County Health and Human Services Agency (Agency) first opened a voluntary case with Mother and F.N. after Mother tested positive for methamphetamines during her first trimester of pregnancy with F.N. and F.N. tested positive at birth. In August 2020, the maternal grandmother of F.N. notified the Agency of an incident of domestic

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

violence between Mother and Mother's 17-year-old daughter. Maternal grandmother also notified the Agency of Mother's ongoing substance abuse and declining mental health. During its investigation of this report, the Agency initiated a safety plan for F.N. The Agency contacted F.N.'s presumed father, who indicated that due to his own issues, he was not in a place to care for F.N. The father acknowledged that the maternal grandmother served as F.N.'s primary caregiver and that father's involvement with F.N. had been limited to supervised visitation.

Due to ongoing substance abuse, mental health issues, and domestic violence, the Agency believed F.N. to be "at further risk of maltreatment, severe neglect, injury or death." In late August 2020, the Agency petitioned the juvenile court for three-year-old F.N. under section 300, subdivision (b) and applied for a protective custody warrant. The Agency recommended that F.N. be detained with his maternal grandmother to mitigate the safety threats brought about by the Mother. (CT 15, 27.) As noted in its August 2020 initial detention report, the Agency interviewed the Mother and father of F.N. and both reported they did not have any Native American heritage.

At the August 27, 2020 initial detention hearing, Mother appeared but was not yet represented by counsel. Father attended with counsel, who informed the court that father has been found to be F.N.'s father in other family court proceedings and that there was an existing child support and visitation order for father in that case. Father denied the allegations in the section 300 petition but joined the request to have F.N. detained with the maternal grandmother. Counsel also informed the juvenile court that Father had "Native American heritage," stating Father's "maternal grandmother was on the registry. She has passed away. She was on the registry for Creek and Cherokee."

Before continuing the hearing for one day to allow Mother to obtain counsel, the court made a "temporary" finding the Agency had made an adequate showing that F.N. was a child described by section 300, subdivision (b). At the hearing the following day, Mother was not present, but she was represented by counsel. The court confirmed its finding that the Agency had made a prima facie showing that F.N. was a child described by section 300, subdivision (b). The court ordered F.N. detained in out-of-home care until the Agency could place him with his maternal grandmother.[2] The court ordered separate supervised visitation for the parents. The court also ordered the parents to complete the "Parental Notification of Indian Status" form and submit it to the Agency. The court deferred on the ICWA issue and set the matter for a jurisdiction and disposition hearing in September 2020.

In advance of the September hearing, the Agency made further inquiry of F.N.'s Indian heritage, interviewing Father and the maternal grandmother. Mother had previously disclosed she had no relevant information. In the Agency's September 2020 jurisdiction/disposition report, the Agency included information on ICWA status stating, "The Indian Child Welfare Act does or may apply." Father reported his mother was affiliated with "Creek Cherokee," although she passed away in 2010, and his grandmother was "full Creek Indian and the tribe was from Muskogee, Oklahoma." Father himself was not registered with any Indian tribe and he confirmed that no other relative in his family would have further information about tribal affiliation. He denied having lived on an Indian reservation and

---

[2] The maternal grandmother's home was not yet approved for placement, so the court authorized an extended visit to the grandmother's home and granted the Agency discretion to place F.N. once the grandmother's home was approved.

denied he had any other reason to believe F.N. was an Indian child. The maternal grandmother denied any Indian heritage and had no information about tribal affiliation. As such, the Agency's report included the following recommendation as to the ICWA: "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child. Reasonable Inquiry has been made to determine whether the child is or may be an Indian child." The Agency further recommended that the court make a true finding on the section 300 petition for F.N., remove custody from the mother, and find detriment to place with the father. The Agency recommended reunification services for both parents and separate supervised visitation.

In September 2020, the court held the jurisdiction and disposition hearing. Father was present with counsel. The Mother did not attend the hearing, but she was represented by counsel. Through counsel, Mother denied the allegations in the Agency's section 300 petition and requested the matter set for trial. Her counsel also asked "that the court defer on the issue of the Indian Child Welfare Act. I do need to follow up with [Mother] on that a little bit more." The Agency also acknowledged "[i]t is possible that this will become a case where the Indian Child Welfare Act does apply, but I'd ask the court at this time to defer pending the Agency's ongoing communications with the Cherokee Tribes, and I would ask the court to not yet order that the Agency notice any tribes." The court continued to defer on ICWA "while we collect more information." The court set a pretrial settlement conference for October 2020 and the contested trial for November 2020.

The Agency continued its ICWA inquiry efforts. As detailed in the Agency's October 2020 addendum report, the Agency called the Muscogee Creek Nation, which informed the Agency in a phone call that it had looked

5

up the family's information and "there was nothing for them in their database." The Agency reported it also received an email from the Creek Nation stating, "Based on the information provided by your notice of ICWA proceedings, the child(ren) on this case are ineligible for ICWA in relationship to the Muscogee (Creek) Nation." The Nation also informed the Agency that "there were no other tribes with Creek in their name in that state."

The Agency also called the Cherokee Nation and the United Keetoowah Bank of Cherokee Indians in Oklahoma and conducted email communication with the Eastern Band of Cherokee Indians. Each requested the Agency send the "ICWA-030" form with the family's information so the tribes could confirm eligibility. The Agency's report further detailed that it had sent the required forms on October 12, 2020 to all three. The October 2020 addendum, however, did not attach the three ICWA-030 forms.

At the October 2020 pretrial status conference, the father was present with counsel. The Mother did not attend the conference, but she was represented by counsel, who confirmed Mother was requesting the matter be set for trial. Father also confirmed the matter for trial. Counsel for the Agency notified the court that it had contacted the Muscogee Creek Nation, who "indicated that the great-grandmother was not a member." The Agency reported that the Nation had "checked their records, and it does not sound like [the] family would be eligible for membership in this tribe." The Agency further informed the court that it had "reached out to the three Cherokee tribes as there was an indication that the family may have Cherokee history." The Agency asked the "[c]ourt continue to defer on ICWA until the trial date. The Agency would like to make some additional efforts to get in touch with the Cherokee tribe, and we can provide those updates at trial." The court

6

confirmed trial for November 2020 and stated "[a]t that time, we will address the Indian Child Welfare Act."

In advance of the November 2020 hearing, the Agency submitted a November 2020 addendum report. The Agency confirmed it maintained its recommendations from the September 2020 jurisdiction and disposition report. The Agency's addendum included no further information about the ICWA or about the Agency's inquiry efforts.

At the contested November 2020 adjudication hearing, the Mother's counsel requested a continuance. Before continuing the hearing, the Agency and court addressed ICWA. As it had done at the September 2020 hearing, the Agency represented that it had reached out to the Muscogee Creek Tribe, which "confirmed that there is not any record of that relative and that they have no evidence that the father or child would be eligible for membership." The Agency also reiterated that they had "reached out to all three Cherokee Tribes, the United Keetoowah Tribe, the Cherokee Nation, and the Eastern Band of Cherokee, and [the Agency] did send written 030s more than a month ago. [The Agency] ha[s] not received any response." The Agency requested a finding that ICWA inquiry was sufficient at that point in time and that "the [c]ourt has no reason to know that this minor is an Indian child." The Agency also stated that it would continue to report on any further information received as a result of inquiry under the ICWA. The other parties did not address ICWA or respond to the Agency's representations.

The court found that the Agency's ICWA inquiry had "been sufficient to that point" and that "[r]ight now[,] there is no reason to know [F.N.] is an Indian child." The court concluded, "This finding is made without prejudice. If we get additional information, we can reopen inquiry." The court's minute order from the hearing further reflected its ICWA findings, stating: (1)

7

"Notice pursuant to the Indian Child Welfare Act is not required because the court has reason to know the child is not an Indian child. Reasonable inquiry has been made to determine whether the child is or may be an Indian child"; and (2) "The court finds without prejudice that the Indian Child Welfare Act does not apply to this proceeding." The court then continued the contested hearing until January 2021.

Prior to the January 2021 hearing, the Agency submitted two January 2020 addendum reports, providing the court further information about parents and the issues leading to the dependency proceedings. These reports included no further information about ICWA or the Agency's inquiry efforts. Again, the Agency confirmed it maintained its recommendations from the September 2020 jurisdiction/disposition report.

In January 2021, the court held the contested adjudication hearing. Both parents attended with counsel and the trial proceeded by way of document trial and stipulated testimony from the maternal grandmother. The court admitted the August 2020 initial detention report, the September 2020 jurisdiction/disposition report, and the Agency addendum reports from September, October, and November 2020, a December 2020 addendum,[3] and

---

[3] Mother moved to augment the record on appeal in this matter to include documents missing from the record: the December 2020 Agency addendum report and the three ICWA 030 forms the Agency purportedly sent in October 2020. We granted Mother's request, but the clerk of the superior court subsequently notified this court that "[a]fter a diligent search of the court files as well as other applicable areas of the juvenile court business office, [the clerk] ha[s] been unsuccessful in locating" these items. In its response brief, the Agency contends that when counsel for the Agency requested the December 2020 addendum be admitted to evidence, it incorrectly referred to the "JV-285 Relative Information form" as an addendum. The Agency explained that form (and not any addendum) "is the only record in evidence which was filed with the court on that date."

8

the two January 2021 addendum reports.  The grandmother's stipulated testimony was as follows:  "The mother . . . visits [F.N.] on a daily basis.  The mother does not show any signs of substance abuse at the visits.  The mother regularly calls to get updates about [F.N.'s] health, development, and well-being, and since the case started, the mother has shown big improvements in her consistency and attitude."  Neither the court nor any of the parties addressed ICWA at the hearing.

The court adopted many of the recommendations included in the Agency's initial September 2020 jurisdiction/disposition report, finding the petition true by clear and convincing evidence, removing custody from the mother, and ordering reunification services for both parents.  The court made no explicit mention about ICWA on the record.

However, the minute order for the hearing stated, "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child.  Reasonable inquiry has been made to determine whether the child is or may be an Indian child."  At the conclusion of the hearing, the court set a six-month review hearing for July 19, 2021.  Mother timely appealed the juvenile court's January 2021 order.  Father did not appeal or otherwise join in Mother's arguments on appeal.

The Agency subsequently filed a motion to augment the record on appeal, which includes a July 2021 Agency addendum report, submitted to the juvenile court in advance of F.N.'s six-month review hearing scheduled to occur in July 2021.  The report attaches the ICWA-030 form the Agency sent to the three Cherokee tribes in October 2020, with certified mail receipts.  The report also attaches an April 2021 response from the Cherokee Nation stating that the Nation examined its tribal records and, based on its examination, F.N. is "NOT an 'Indian child/children' in relation to the

9

Cherokee Nation as defined in the Federal Indian Child Welfare Act, 25 U.S.C. Section 1903(4)."

DISCUSSION

A. *Issues on Appeal*

Mother's February 2021 notice of appeal challenges the juvenile court's January 2020 findings related to ICWA, which stated, "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child." The court also determined that "[r]easonable inquiry has been made to determine whether the child is or may be an Indian child." On appeal, however, Mother focuses on an earlier hearing and claims the court erred in November 2020 by initially finding there was no reason to know F.N. was an Indian Child. Mother also argues that at the same November 2020 hearing, the court erroneously found the Agency's inquiry and notice efforts "sufficient up to this point." She argues the Agency was required to provide notice under the ICWA because there *was* reason to know F.N. was an Indian child. She further claims the Agency failed to provide adequate notice under ICWA because "[t]here is no evidence in the record that the Agency sent ICWA-030 forms and requested family information to the Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee in Oklahoma.

B. *ICWA Inquiry and Notice Requirements*

In 1978 Congress enacted ICWA "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." (25 U.S.C. § 1902.) ICWA defines an "Indian child" as an

10

"unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903, subd. (4); see § 224.1.)

In every dependency proceeding, the trial court and Agency have an affirmative and continuing duty to determine if ICWA applies.  (§ 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 10–11.)  If there is "reason to believe" a child is an Indian child, section 224.2, subdivision (e) requires the court or social worker to "make further inquiry regarding the possible Indian status of the child. . . ."  (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290.)  There is a "reason to believe" a child is an Indian child whenever the court or social worker has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1); see also § 224.2, subd. (d)(1)-(6); Cal. Rule of Court,[4] rule 5.481.)  This further inquiry is to enable the court to "determine whether there is reason to *know* a child is an Indian child." (§ 224.2, subd. (e)(2).)  "Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case."  (§ 224.2, subd. (e)(2)(C).)

If further inquiry reveals reason to *know* the child is an Indian child under ICWA, the court and Agency must comply with the formal notice requirements of section 224.3. (§ 224.2, subd. (f); see also rule 5.481, subds. (a)(4) and (c)(1).)  The Indian tribe determines whether the child is an Indian child under ICWA.  (*T.G.*, *supra*, 58 Cal.App.5th at p. 294.)  A tribe's

---

[4]     Further undesignated rule references are to the California Rules of Court.

determination "that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive." (*Ibid.*; § 224.2, subd. (h).)

As such, meaningful notice must be provided to the relevant Indian tribe(s). (25 U.S.C. § 1912(a); *In re Karla C.* (2003) 113 Cal.App.4th 166, 175 (*Karla C.*); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253 (*Dwayne P.*), [" 'Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending' [Citation.]"].) ICWA requires the Agency to notify the "parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); § 224.3, subd. (a).) " The notice must include the name, [birth date], and birthplace of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name; a statement of the right to the tribe to intervene in the proceeding; and information about the Indian child's biological mother, biological father, maternal and paternal grandparents and great-grandparents or Indian custodians, including maiden, married and former names or aliases; [birth dates]; places of birth and death; current and former addresses; tribal enrollment numbers, and/or other identifying information." (*In re Louis S.* (2004) 117 Cal.App.4th 622, 630; see § 224.3, subd. (a)(5)(A)-(H).) Specifically, rule 5.481, subdivision (c) requires the Agency to send form "ICWA-030" to the "parent or legal guardian and Indian custodian of an Indian child, and the Indian child's tribe." And "[n]otice shall be sent . . . for every hearing that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement . . . unless it is determined that [ICWA] does not apply to the case in accordance with section 224.2." (§ 224.3, subd. (b).)

12

To enable a court to determine if sufficient notice was given, the Agency must file the ICWA notice, return receipts, and responses received from the tribe(s) with the juvenile court. (*Karla C.*, *supra*, 113 Cal.App.4th at pp. 175, 178–179.) ICWA notice requirements are strictly construed. (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1216.) "When proper notice is not given under the ICWA, the court's order is voidable." (*Karla C.*, at p. 174, citing 25 U.S.C. § 1914; *Dwayne P.*, *supra*, 103 Cal.App.4th at p. 260.)

"We review the trial court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251 (*D.N.*).)

C.  *Mother's Appeal of the Court's Finding That There Was No Reason to Know the Child was an Indian Child is Untimely and Moot*

Mother contends the court erred in finding there was no reason to know F.N. is an Indian child in November 2020. She argues that the record reveals the court had "reason to know" F.N. was an Indian child, thus triggering section 224.3's notice requirements. We disagree.

First, Mother's appeal of this finding is untimely. (See *Van Beurden Ins. Servs., Inc. v. Customized Worldwide Weather Ins. Agency* (1997) 15 Cal.4th 51, 56 [This court lacks jurisdiction to review an order where the notice of appeal was not timely filed as to the order].) Mother's notice of appeal filed in February 2020 purports to challenge the court's January 21, 2021 jurisdictional/dispositional order. Yet, on appeal, the Mother challenges the court's findings as to ICWA made at a November 2020 hearing. To the extent Mother challenges the court's November 2020 order, her notice of appeal was filed more than 60 days after that order. (Rule 8.104.)

Second, at the January 2021 contested hearing—the hearing from which Mother's appeal extends—the court made a contrary finding. There,

13

the court found "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child." Ordinarily, the court's subsequent finding would render Mother's challenge moot. (See *In re Kristin B.* (1986) 187 Cal.App.3d 596, 604–605.) Problematically, however, the Agency asks us to ignore the courts finding, arguing "that the inclusion of this ICWA notice order was merely an oversight on the part of the juvenile court." We decline the Agency's request and instead, remand to the juvenile court to clarify and correct, if necessary, its findings as to whether or not there is reason to know F.N. may be an Indian child.

Remand is the correct remedy for the court to correct any errors in its minute order. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [" 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citations.]' "].) Where an error is raised on appeal, "the appellate court itself should order the trial court to correct" the error. (*Id.* at p. 188.) While we cannot ignore the court's present January 2021 minute order, we agree the record contains sufficient evidence of a likely error by the trial court, and as such, conditionally reverse and remand so the juvenile court can correct the record.

The likely error derives from the Agency's early inquiry efforts regarding applicability of ICWA to F.N. At the August 2020 initial detention hearing for F.N., counsel for father informed the court that father had "Native American heritage" and that F.N.'s great-grandmother was "on the registry for Creek and Cherokee." In conducting further inquiry in September 2020, father reported to the Agency that his mother was affiliated

14

with "Creek Cherokee" and his grandmother was "full Creek Indian and the tribe was from Muskogee, Oklahoma." Based on this information, the Agency informed the court in its September jurisdiction/disposition report, ICWA "does or may apply." The Agency further recommended in its report that the court find "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child."

At the September jurisdictional hearing, however, the Agency requested the court defer on making its finding regarding ICWA. The Agency argues that when the Agency made this request, the Agency was "clarif[ying] its recommendation regarding ICWA" to the court and was "assert[ing] that further inquiry was all that was required in [F.N.'s] case." The record does not support the Agency's argument. At the September hearing, the Agency asked, "to defer pending the Agency's ongoing communications with the Cherokee tribes," and more specifically, that the court "not yet order that the agency notice any tribes." Thus, there is no indication in the record that at this time, the Agency changed its recommendation that the court require notice under ICWA.

The Agency also contends it "never renewed the recommendation that the court make a formal order for ICWA notice." The Agency ignores its October, November, and January addendum reports, all of which informed the court that the Agency "maintain[ed] the recommendations stated in the Jurisdiction and Disposition Report dated 9/21/2020," the report which recommended the court order formal notice.

The record does show, however, that at the November 2020 hearing, the Agency informed the court of its belief that "the Court has no reason to know that this minor is an Indian child." The Agency thus asked the court to find that the Agency's efforts were "sufficient to date." The court ultimately

15

agreed, finding "there is no reason to know [F.N.] is an Indian child" and that Agency's ICWA inquiry had "been sufficient to this point." The court's minute order further stated, "[t]he court finds without prejudice that the Indian Child Welfare Act does not apply to this proceeding."

As stated *ante*, however, at the contested January 2021 hearing, the court's minute order includes a contrary finding, that, "Notice pursuant to the Indian Child Welfare Act is required because the court has reason to know the child may be an Indian child." The Agency contends the court must have "inadvertently adopted" this recommendation from the September jurisdiction/disposition report because there was no further testimony, evidence, or argument about ICWA at the January hearing. This error could also have been avoided had the Agency revised its recommendations to the court following its inquiry efforts and after the court made its finding in November 2020 that ICWA did not apply.

Based on our review of the record, it appears the court's finding may have indeed been inadvertent. While announcing its findings, the court only implicitly referred to ICWA when it stated, "I'll adopt 2 through 4," referring to recommendations two through four in the Agency's September 2020 jurisdiction/disposition report. Recommendation number three was the finding requiring ICWA notice. We cannot simply ignore the minute order as there is no inconsistency between the court's findings on the record (adopting recommendation three) and the court's minute order including that finding. (C.f. *T.G.*, *supra*, 58 Cal.App.5th at p. 299, quoting *In re Nia A.* (2016) 246 Cal.App.4th 1241, 1247, fn. 1 [" ' When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls ' "].) Nevertheless, we recognize there is inconsistency between the record from November 2020—in which the court

16

found ICWA did not apply to the proceedings—to January 2021 where the court found notice under ICWA was required. Between this time, none of the parties introduced additional evidence to the court about ICWA. Neither the parties nor the court made any other statements about ICWA at the January 2021 hearing.

Accordingly, we conditionally reverse the juvenile court's January 2021 jurisdiction/disposition order and remand with direction to the trial court to clarify its finding as to ICWA, in particular, as to whether or not there is reason to know F.N. is an Indian child and ICWA applies.

D. *ICWA's Notice Requirements Were Not Triggered*

Mother contends the Agency was required under sections 224.2, subdivision (f) and 224.3, subdivision (a)(1) to send "notice" to the three Cherokee tribes using the ICWA-030 forms and that the court could not make a finding that there was no reason to know F.N. was an Indian child in their absence. We disagree.

As discussed *ante*, we have remanded to the juvenile court to clarify its January 2021 finding requiring notice under ICWA. Nevertheless, because both the court's November 2020 and January 2021 orders include findings that the Agency's inquiry efforts, finding respectively that inquiry "been sufficient to that point" and that "[r]easonable inquiry has been made," we turn to the merits of Mother's argument that notice under ICWA was triggered.

The court and Agency have "reason to know" a child is an Indian child if any of the following occur: (1) a designated individual "informs the court that the child is an Indian child," (2) the residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village"; (3) a designated individual "informs the court that it has

17

discovered information indicating that the child is an Indian child"; (4) the child themself "gives the court reason to know that the child is an Indian child"; (5) "[t]he court is informed that the child is or has been a ward of a tribal court"; or (6) "[t]he court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)-(6).) On appeal, Mother does not contend, and indeed the substantial evidence does not show, that any of these occurred.

Instead, the only information about Indian heritage came from F.N.'s father about possible Indian heritage through the Cherokee tribes and the Muscogee Creek Nation. While father denied ever living on a reservation or being a member of any Indian tribe, he did state his belief that his mother and maternal grandmother were registered members. Where a parent only lists a child's grandparent's name as a member of an Indian tribe, this does not establish a reason to know a child is an Indian child, nor does it trigger the noticing requirement. (See *In re A.M.* (2020), 47 Cal.App.5th 303, 321 [rejecting mother's claim that she may have Indian heritage rose to the level of " 'information indicating that the child[ren] [are] . . . Indian [child]ren' (Citations omitted.)"].)

Accordingly, the information provided to the Agency was sufficient to establish the Agency and court "had reason to believe" F.N. may be an Indian child, thus triggering only the duty to conduct further inquiry with the relevant Indian tribes. (*A.M.*, *supra*, 47 Cal.App.5th at pp. 322–323; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We conclude that substantial evidence supports the Agency complied with its inquiry obligations pursuant to section 224.2, subdivision (e).

18

The Agency conducted further interviews with the maternal grandmother, who denied any knowledge of F.N. having Indian heritage. The Agency could not interview father's mother or paternal grandmother as both were deceased.[5] (See § 224.2, subd. (e)(2) [stating further inquiry "[i]nterviewing the parents, Indian custodian, and extended family members to gather the information" about whether the child is, or may be, an Indian child].)

As to the known Indian tribes, the Agency was required to "[c]ontact[ ] the tribe or tribes," which included "telephone, facsimile, or electronic mail" to "shar[e] information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).) The Agency contacted the Muscogee Creek Nation, which informed the Agency in a phone call that it had looked up the family's information and "there was nothing for them in their database." The Agency reported it also received an email from the Creek Nation stating, "Based on the information provided by your notice of ICWA proceedings, the child(ren) on this case are ineligible for ICWA in relationship to the Muscogee (Creek) Nation." The Nation also informed the Agency that "there were no other tribes with Creek in their name in that state."

The Agency also contacted the Cherokee Nation, United Keetoowah Bank of Cherokee Indians, and Eastern Bank of Cherokee Indians in Oklahoma. Each requested the Agency send the "ICWA-030" form with the

---

5     The record does not contain completed Parental Notification of Indian Status forms (ICWA-20) from either parent, despite the court's order they submit them. These forms should be completed. (Rule 5.481(a)(2)(c).)

19

family's information so the tribes could confirm eligibility. The Agency reported that it had sent these forms in October 2020.

Although the Agency could have attached the three ICWA-030 forms with its October addendum, thereby better documenting its efforts, the substantial evidence shows it provided sufficient information to support the court's findings that the Agency's inquiry efforts were sufficient. (*D.S.*, *supra*, 46 Cal.App.5th at p. 1054.) Section 224.2, subdivision (g) does not require the court review the actual forms to determine if the Agency "used due diligence to identify and work with all of the tribes." Rather, "the court shall confirm [sufficient inquiry], by way of a report, declaration, or testimony included in the record." (§ 224.2, subd. (g).) Here, there is no dispute the Agency's report and information provided to the court detailed its inquiry efforts.

Based on our decision, we deny the Agency's request to augment the record on appeal to include the ICWA-030 form it sent to the Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee in Oklahoma in October 2020. We note that the Agency recently filed these forms, along with an April 2021 response from the Cherokee Nation, with the trial court for the upcoming July 2021 six-month review hearing for F.N. The April 2021 response is new evidence the juvenile court has not yet had an opportunity to review. As we are remanding to the trial court to clarify its January 2021 finding related to applicability of ICWA, and given this additional new information from the Cherokee Nation, which includes the Nation's determination that F.N. is "NOT an 'Indian child/children' in relation to the Cherokee Nation as defined in the Federal Indian Child Welfare Act, 25 U.S.C. Section 1903(4)," the juvenile court will

20

make additional findings related to ICWA.  We leave it to the juvenile court's discretion to do so in the first instance.

## DISPOSITION

The juvenile court's January 2021 jurisdictional and dispositional order is conditionally reversed.  The case is remanded to the juvenile court with directions to clarify its finding as to whether or not ICWA applies to these proceedings.  If the court finds that there is no reason to know F.N. is an Indian child, the remainder of the jurisdictional and dispositional order shall be reinstated.  Remittitur shall issue immediately.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.